UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIGOBERTO CARDENAS-BORBON,

        Petitioner,

                                CASE NO. 2:10-CV-13548
   v.                        JUDGE AVERN COHN
                                MAGISTRATE JUDGE PAUL J. KOMIVES

SHERRY BURT,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    C.   *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    D.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    E.   *Weight and Sufficiency of the Evidence (Claims I & II)* . . . . . . . . . . . . . . . . . . . . . . . . . . 14
         1.   *Weight of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
         2.   *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
             a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
             b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    F.   *Joint Trial (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
         2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    G.   *Police/Prosecutorial Misconduct (Claims V, XII-XIII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
         1.   *Prosecutor's Comments (Claim XII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
             a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
             b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
         2.   *Perjury (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
             a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
             b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
         3.   *Suppression (Claim XIII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
             a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
             b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    H.   *Bindover/Jurisdiction (Claims VI, XIV, XVII-XVIII, XX, and XXIV(A), (D), (E))* . . . . . . . . . . . . 33
         1.   *Probable Cause for Arrest and Bindover* . . . . . . . . . . . . . . . . . . . . . . . . . . 34
         2.   *Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    I.   *Expert Witness (Claim XI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
         2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    J.   *Jury Instructions (Claims XV-XVI and XXIV(B), (C))* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
         1.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

       2.      *Analysis* .................................................... 39
            a. Biased Jury Instruction ...................................... 39
            b. Failure to Give Curative Instruction ......................... 41
K.     *Fair Cross Section (Claim XXI)* ......................................... 43
       1.      *Legal Standard* .................................................. 43
       2.      *Analysis* ....................................................... 44
L.     *Speedy Trial (Claim XXII)* ............................................ 45
       1.      *Michigan 180-Day Rule and Federal Speedy Trial Act* ............... 45
       2.      *Sixth Amendment Speedy Trial Right* ............................ 46
            a. Legal Standard ............................................ 46
            b. Analysis ................................................. 48
M.    *Ineffective Assistance of Counsel (Claims IV, VII, IX-X, XIX & XXIV)* .................... 50
       1.      *Clearly Established Law* .......................................... 51
       2.      *Trial Counsel (Claims IV, VII, IX-X & XIX)* ............................ 52
            a. Failure to Properly Argue Motions to Suppress (Claim IV) ..................... 53
            b. Ineffective Assistance at Sentencing (Claim VII) ................ 55
            c. Failure to Challenge Loss of Documents (Claim IX) ......................... 56
            d. Failure to Challenge Denial of Vienna Convention Rights (Claim X) ............ 57
            e. Failure to Raise Actual Innocence (Claim XIX) ............................ 59
       3.      *Appellate Counsel (Claims XIX & XXIV)* ............................. 59
N.     *Cumulative Error (Claim VIII)* ......................................... 61
O.     *Recommendation Regarding Certificate of Appealability* ............................ 61
       1.      *Legal Standard* .................................................. 62
       2.      *Analysis* ....................................................... 63
P.     *Conclusion* ....................................................... 64
III.      <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> .................................... 64

*       *       *       *       *

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.      <u>REPORT</u>:

A.      *Procedural History*

     1.      Petitioner Rigoberto Cardenas-Borbon is a state prisoner, currently confined at the Muskegon Correctional Facility in Muskegon, Michigan.

     2.      On December 8, 2006, petitioner was convicted of possession with intent to deliver 1,000 grams or more of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(i); and conspiracy to possess with intent to deliver 1,000 grams or more of cocaine, MICH. COMP. LAWS §§ 750.157a, 333.7401(2)(a)(i), following a jury trial in the Macomb County Circuit Court.  On March 7, 2007,

2

he was sentenced to two consecutive terms of 16-40 years' imprisonment.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, the following claims:

I.      BOTH MICHIGAN LAW AND THE MICHIGAN AND UNITED STATES
        CONSTITUTION REQUIRE SUFFICIENT EVIDEN[CE] TO CONVICT A
        DEFENDANT. THERE WAS INSUFFICIENT EVIDENCE IN THIS CASE
        TO CONVICT DEFENDANT OF EITHER POSSESSION WITH INTENT
        TO DELIVER COCAINE OR CONSPIRACY TO DELIVER.

II.     THE VERDICT WAS AGAINST THE GREAT WEIGHT OF THE
        EVIDENCE.

III.    THE TRIAL COURT ERRED AND VIOLATED DEFENDANT'S RIGHT
        TO DUE PROCESS OF LAW AND TRIAL BY JURY IN DENYING
        DEFENDANT'S MOTION FOR SEPARATE TRIAL.

IV.     DEFENSE COUNSEL RENDERED DEFENDANT INEFFECTIVE
        ASSISTANCE OF COUNSEL FOR HIS FAILURE TO BRING MOTIONS
        TO SUPPRESS THE EVIDENCE ON FOR HEARING.

        A.      DEFENSE COUNSEL WAS INEFFECTIVE IN FAILING TO
                ARGUE HIS MOTION TO SUPPRESS EVIDENCE BASED ON AN
                ILLEGAL STOP OF THE VEHICLE.

        B.      DEFENSE COUNSEL WAS INEFFECTIVE IN FAILING TO
                ARGUE HIS MOTION TO SUPPRESS THE EVIDENCE ON
                GROUNDS OF UNLAWFUL DETENTION AND ARREST
                CONTRARY TO THE 4TH AND 14TH AMENDMENTS TO THE
                UNITED STATES CONSTITUTION.

        C.      DEFENSE COUNSEL WAS INEFFECTIVE IN FAILING TO
                ARGUE HIS MOTION TO SUPPRESS EVIDENCE BASED ON NO
                PROBABLE CAUSE TO ARREST.

        D.      DEFENSE COUNSEL WAS INEFFECTIVE IN FAILING TO
                ARGUE HIS MOTION TO SUPPRESS EVIDENCE BASED ON
                ILLEGAL SEARCH AND SEIZURE OF VEHICLE.

V.      POLICE AND PROSECUTORIAL MISCONDUCT DEPRIVED
        DEFENDANT OF A FAIR TRIAL CONSTITUTION MANIFEST
        INJUSTICE. US CONST, AMS V, VI; CONST 1963, ART I §§ 17, 20.

VI.     THE TRIAL COURT ERRED AND VIOLATED DEFENDANT'S DUE
        PROCESS RIGHTS IN DENYING DEFENDANT'S MOTION TO QUASH
        THE INFORMATION.

VII.    DEFENSE COUNSEL RENDERED DEFENDANT INEFFECTIVE
        ASSISTANCE BY ACQUIESCING IN THE PROSECUTOR'S UNPROVEN
        ALLEGATION THAT DEFENDANT WAS A RINGLEADER IN A DRUG
        CARTEL WHICH THE COURT RELIED ON IN SENTENCING
        DEFENDANT.

Petitioner also filed a *pro se* supplemental brief raising six additional claims:

VIII.   THE CUMULATIVE EFFECT OF ERRORS WAS SO PREJUDICIAL AS
        TO DENY DEFENDANT A FAIR TRIAL.

IX.     TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO
        INVESTIGATE AND CHALLENGE THE DISAPPEARANCE OF
        DEFENDANT'S PASSPORT/VISA/PERMIT FOR NATIONWIDE
        TRAVEL.

X.      TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO
        INVESTIGATE AND CHALLENGE THE DENIAL OF DEFENDANT'S
        RIGHT TO COMMUNICATIONS WITH THE MEXICAN CONSULATE.

XI.     THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING
        FEDERAL AGENT AS "EXPERT WITNESS."

XII.    DEFENDANT WAS DENIED A FAIR TRIAL BECAUSE OF HIS STATUS
        AS AN ILLEGAL ALIEN.

XIII.   THE PROSECUTOR COMMITTED MISCONDUCT IN FAILING TO
        DISCLOSE A WITNESS' REASONABLE EXPECTATION OF LENIENCY
        ON HIS PENDING CRIMINAL CHARGES IN EXCHANGE FOR
        FAVORABLE TESTIMONY AGAINST DEFENDANT.

The court of appeals found no merit to petitioner's claims, and affirmed his convictions and

sentences.  *See People v. Cardenas-Borbon*, No. 277639, 2008 WL 5003030 (Mich. Ct. App. Nov.

25, 2008) (per curiam).[1]

---

[1]Petitioner attempted to file a second *pro se* supplemental brief raising five additional claims.  The court of appeals denied petitioner leave to file this brief.  These five claims later formed the basis of petitioner's motion for relief from judgment, discussed below.

4

4.      Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Cardenas-Borbon*, 485 Mich. 861, 771 N.W.2d 754 (2009).

5.      On September 7, 2010, petitioner filed an application for the writ of habeas corpus in this Court.  In his application, petitioner raises the thirteen claims raised in the Michigan courts on direct appeal, as well as eleven additional claims:

XIV.    ADDITIONAL DOCUMENTATION EXISTS WHICH PROVES THAT "INFORMATION" WAS FALSIFIED, DENYING PETITIONER HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

XV.     THE BIAS JURY INSTRUCTIONS PREJUDICED PETITIONER.

XVI.    TRIAL COURT FAILED TO GIVE JURY INSTRUCTION TO DISREGARD CODEFENDANTS' TESTIMONY THAT SUGGESTED THREATS WERE MADE BY PETITIONER OR HIS FAMILY.

XVII.   DISTRICT COURT ABUSE OF DISCRETION IN BINDING OVER PETITIONER TO CIRCUIT COURT FOR TRIAL ON DISINGENUOUS INFORMATION THAT DENIED PETITIONER DUE PROCESS OF LAW UNDER U.S. AND STATE CONSTITUTIONAL RIGHTS.

XVIII.  ADDITIONAL DOCUMENTS EXIST WHICH PROVE THAT THE CIRCUIT COURT USED "INFORMATION THAT WAS FALSIFIED" AND INCONSISTENT THAT DEPRIVED PETITIONER OF HIS RIGHTS TO HAVE MOTION TO QUASH AND SEVERANCE GRANTED.

XIX.    TRIAL AND APPELLATE COUNSELS FAILED TO RAISE THE ISSUE OF ACTUAL INNOCENCE.

XX.     PETITIONER WAS DEPRIVED OF DUE PROCESS OF LAW UNDER MICHIGAN CONST, 1963, Art 1, § 17 AND THE FEDERAL CONST, 5TH AND 14TH AMENDMENTS, IN THAT PETITIONER AS A LEGAL ALIEN ENJOYED THE RIGHT TO BE FREE FROM UNJUSTIFIABLE LITIGATION, WHERE THE MACOMB COUNTRY PROSECUTOR, LAW ENFORCEMENT OFFICERS, DEA AGENT(S) MANIPULATED, FABRICATED DOCUMENTARY EVIDENCE, WHICH WAS ACCORDED THE PRESUMPTION OF CORRECTNESS WHEN EXECUTED DURING THE COURSE OF NORMAL BUSINESS,

THEREBY DEMONSTRATING PERSONAL JURISDICTION OVER PETITIONER, UNDER THE THEORY OF EXTRATERRITORIAL JURISDICTION, WHICH WAS NEVER LAWFULLY ACQUIRED BY THE COURTS, EFFECTIVELY RENDERING ALL SUBSEQUENT PROCESS NULL AND VOID AND UNENFORCEABLE AS A MATTER OF LAW.

XXI.   PETITIONER WAS DEPRIVED OF BOTH A FAIR TRIAL WITH AN IMPARTIAL JURY DRAWN FROM A FAIR CROSS-SECTION OF THE COMMUNITY AND THE EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED UNDER BOTH MICHIGAN CONST, 1963, ART 1, § 20 AND THE 6TH AND 14TH AMENDMENTS TO THE US CONST, WHERE THERE WERE NO HISPANIC PERSONS ON THE JURY ARRAY FROM WHICH THE JURY WAS SELECTED DUE TO THE SYSTEMATIC EXCLUSION OF THE VAST MAJORITY OF HISPANIC RESIDENTS OF MACOMB COUNTY, FROM WHICH THE JURY SELECTION WAS COMPRISED OF, AND THE TRIAL COUNSEL ONLY OBJECTED ORALLY AT THE END OF JURY SELECTION.

XXII.   PETITIONER WAS DEPRIVED OF HIS RIGHT TO A SPEEDY TRIAL, AS IS GUARANTEED UNDER BOTH MICHIGAN CONST, 1963, ART 1 § 20 AND THE 6TH AND 14TH AMENDMENTS TO THE US CONST, WHERE PETITIONER WAS NOT BROUGHT TO TRIAL UNTIL APPROXIMATELY SOME NINETEEN MONTHS AFTER HIS ARREST.

XXIII. PETITIONER WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, GUARANTEED UNDER BOTH MICHIGAN CONST, 1963, ART 1 § 20 AND THE 6TH AND 14TH AMENDMENTS TO THE US CONST, WHERE APPELLATE COUNSEL FAILED TO RAISE OBVIOUS, SUBSTANTIAL AND COMPELLING ISSUES IN THE ORIGINAL BRIEF ON DELAY APPLICATION FOR LEAVE TO APPEAL AFTER MISSING THE DIRECT APPEAL.

XXIV. PETITIONER WAS DEPRIVED OF DUE PROCESS OF LAW AND A FAIR TRIAL, GUARANTEED UNDER BOTH MICHIGAN CONST 1963, ART 1 § 17, 20 AND THE 5TH, 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION, WHERE:

A.   DOCUMENTATION EXISTS WHICH PROVES THAT INFORMATION WAS FALSIFIED.

B.   TRIAL COURT'S BIAS JURY INSTRUCTION PREJUDICED PETITIONER.

C.  TRIAL COURT FAILED TO GIVE JURY INSTRUCTION TO DISREGARD CODEFENDANT'S TESTIMONY THAT SUGGESTED THREATS WERE MADE BY PETITIONER'S FAMILY.

D.  DISTRICT COURT'S ABUSE OF DISCRETION IN BINDING OVER PETITIONER TO CIRCUIT COURT FOR TRIAL ON DISINGENUOUS INFORMATION THAT DENIED PETITIONER'S DUE PROCESS OF LAW UNDER STATE AND UNITED STATES CONSTITUTIONAL RIGHTS; AND,

E.  DOCUMENTS EXIST WHICH PROVES THAT THE CIRCUIT COURT USED INFORMATION THAT WAS KNOWN TO BE FALSIFIED AND INCONSISTENT THAT DEPRIVED PETITIONER OF HIS RIGHT TO HAVE MOTIONS QUASHED AND SEVERANCE GRANTED.

Along with his habeas application, petitioner filed a motion to hold his petition in abeyance so that he could exhaust these additional claims in the state courts.  The Court granted petitioner's motion on September 14, 2010.

6.  Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising his unexhausted claims.  On January 7, 2011, the trial court denied petitioner's motion for relief from judgment, concluding that he had failed to show good cause for his failure to raise the claims on direct appeal, as required by MICH. CT. R. 6.508(D)(3). *See People v. Cardenas-Borbon*, No. 2005-4728-FC, at 4 (Macomb County, Mich., Cir. Ct. Jan. 7, 2011).  The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders.  *See People v. Cardenas-Borbon*, 493 Mich. 939, 829 N.W.2d 594 (2013); *People v. Cardenas-Borbon*, No. 307598 (Mich. Ct. App. Aug. 31, 2012).

7.  On March 28, 2013, petitioner filed a motion to reopen his habeas application.  The Court granted petitioner's motion on April 3, 2013.

7

8.     Respondent filed her answer on September 27, 2013.  She contends that petitioner's claims first raised in his motion for relief from judgment are barred by petitioner's procedural default in the state courts, and that all of petitioner's claims are without merit.

9.     Petitioner filed a reply to respondent's answer on November 12, 2013.

B.   *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from a drug conspiracy involving cocaine imported from Mexico, through Arizona and on to the Detroit metropolitan area.  Petitioner was tried jointly with his coconspirators, Hugo Moran-Dopico and Antonio Perez-Chica.  The primary evidence against the defendants, including petitioner, came from another coconspirator, Jesus Ramon Cottleon, a/k/a Candelario Herrera, who testified as part of a plea agreement with the prosecution.  The evidence adduced at trial was accurately summarized by the Michigan Court of Appeals in connection with Moran-Dopico's appeal:

> [Moran-Dopico's] convictions arise from his participation with codefendants Jesus Ramon Cottleon,[1] Rigoberto Cardenas-Borbon, Antonio Perez-Chica, and others in trafficking cocaine from Phoenix, Arizona, to the Detroit area. As a result of anonymous information received, the Oakland-Macomb Interdiction Team set up surveillance at a Red Roof Inn in Roseville on April 26, 2005. In the hotel parking lot was a black Ford Explorer with an Arizona license plate. The police discovered that the Explorer was not registered to Jose Martinez, who had paid for the hotel room. During the surveillance, Detective-Sergeant Terence Mekoski observed Perez-Chica coming in and out of the room and pacing near the Explorer. Shortly thereafter, Cottleon arrived, greeted Perez-Chica and Martinez, and the men went into the room. Minutes later, Cottleon and Perez-Chica came out of room and Perez-Chica handed a set of keys to Cottleon, who got in the Explorer and quickly drove it out of the lot. Shortly thereafter, Mekoski stopped the vehicle for traffic infractions, a drug-sniffing canine alerted the police to the presence of drugs, and ten kilograms of cocaine were found in a hidden compartment. Cottleon was arrested at the scene, and Perez-Chica and Martinez were arrested at the hotel.
>
> [1]Cottleon was known by several aliases, including "Candelario Herrera."

8

Cottleon agreed to cooperate with the investigation and informed the police of a conspiracy involving men from Mexico delivering and selling cocaine through [Moran-Dopico], an Arizona resident with connections in the Detroit area. Cottleon testified that in March 2005, Jamie Cardenas-Borbon, a Mexican immigrant and codefendant Rigoberto Cardenas-Borbon's relative, needed clients to sell cocaine. Cottleon met [Moran-Dopico] in his Arizona apartment in March or April 2005, and [Moran-Dopico] advised Cottleon that he could traffic a large quantity of cocaine through his Detroit connections. Cottleon and [Moran-Dopico] later met with Jamie, and [Moran-Dopico] confirmed that he could distribute the cocaine.

On April 20, 2005, Cottleon and [Moran-Dopico] flew to Detroit to verify [Moran-Dopico's] customer base.[2] [Moran-Dopico's] friend picked up the two men from the airport and took them to a restaurant where they met [Moran-Dopico's] associates. The next morning, a deal was arranged between Jamie, via Rigoberto's phone, [Moran-Dopico], and [Moran-Dopico's] associates involving ten kilograms of cocaine at a rate of $18,500 a kilogram to arrive within a few days. [Moran-Dopico] remained in Detroit and Cottleon returned to Arizona on April 21, 2005. On April 24, 2005, Cottleon and Rigoberto left Arizona en route to Michigan in a white Durango with a Mexico license plate. Cottleon and Rigoberto were following Perez-Chica and Martinez in the Explorer that contained the cocaine. Cottleon explained that Rigoberto used a cell phone to assure that there were no problems with the Explorer's travels. On the morning of April 26, 2005, the Durango was stopped in St. Louis for a traffic violation, searched, and released. At the time, the Durango was "about an hour" behind the Explorer. After arriving in Detroit, Cottleon and Rigoberto met defendant and his associates at a gas station. Subsequently, one of defendant's associates drove Rigoberto and Cottleon to the Red Roof Inn, where Cottleon took control of the Explorer. [Moran-Dopico] remained at the gas station waiting for Cottleon to return with the cocaine. Cottleon indicated that when he was arrested, he was en route to meet [Moran-Dopico] at the gas station and they were going to deliver the cocaine to [Moran-Dopico's] associate's house.

> [2]Jamie gave Cottleon $1,500 to purchase the plane tickets. Airline ticket information confirmed that the two men flew together from Arizona to Detroit.

A DEA agent testified that as a result of information provided by Cottleon, the police requested assistance in locating the Durango, because it was likely traveling the same route to return to Arizona. On April 28, 2005, the St. Louis police stopped the Durango. Rigoberto was driving and defendant was a passenger. Both men were arrested.

*People v. Moran-Dopico*, No. 276455, 2008 WL 2038401, at *1-*2 (Mich. Ct. App. May 13, 2008);

*see also*, *Cardenas-Borbon*, 2008 WL 5003030, at *1.

9

C.    *Procedural Default*

Respondent contends that each of petitioner's claims raised on his postconviction motion for relief from judgment are barred by petitioner's procedural default of those claims.  Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim."  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

The Michigan Court of Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  The Sixth Circuit has held that the form orders used by the Michigan courts constitute unexplained orders which are ambiguous as to whether a procedural bar is being invoked, and thus a federal habeas court must "look through" these orders to the last reasoned state court judgment to determine if the claims are barred.  *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc).  Here, the trial court clearly invoked Rule 6.508(D)(3) in rejecting petitioner's claims,

concluding that he had failed to establish good cause for his failure to raise these claims on direct appeal. However, the Court should conclude that petitioner's ineffective assistance of appellate counsel claim is not procedurally defaulted. "Ineffective assistance of appellate counsel claims plainly cannot be raised on direct appeal as they do not arise before the appeal." *Riley v. Jones*, 476 F. Supp. 2d 696, 707 (E.D. Mich. 2007) (Lawson, J.) (citing *Hicks v. Straub*, 377 F.3d 538, 558 n.17 (6th Cir. 2004); *Tucker v. Renico*, 317 F. Supp. 2d 766, 772-73 (E.D. Mich. 2004) (Lawson, J.)); *see also*, *Whiting v. Burt*, 395 F.3d 602, 615 n.7 (6th Cir. 2005). This being the case, notwithstanding petitioner's default it is necessary to consider the merits of all his claims. With respect to each claim petitioner raises, he contends that appellate counsel was ineffective. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Consideration of counsel's effectiveness, however, depends in part on consideration of petitioner's underlying claims. Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst

11

other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-

12

21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.  As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99

(2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

This standard of review applies only to the claims raised by petitioner that were adjudicated on the merits in the state courts.  With respect to the claims raised in petitioner's motion for relief from judgment, which were not adjudicated on the merits, § 2254(d) is inapplicable and the claims are subject to *de novo* review.  *See Dando v. Yukins*, 461 F.3d 791, 796 (6th Cir. 2006).

E.     *Weight and Sufficiency of the Evidence (Claims I & II)*

In his first two claims, petitioner contends that the verdict was against the great weight of the evidence, and that the evidence was insufficient to prove his guilt beyond a reasonable doubt.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Weight of the Evidence*

To the extent that petitioner argues that he is entitled to habeas relief because the jury's verdict was against the great weight of the evidence, his claim is not cognizable.  It is well established

that habeas review is not available to correct errors of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws.").  The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia, infra*.  Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review.  *See Douglas v. Hendricks*, 236 F. Supp. 2d 412, 435-36 (D.N.J.  2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence.").  In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Thus, the only question here is whether the evidence was constitutionally sufficient to prove all of the elements of the offense for which petitioner was convicted beyond a reasonable doubt.

2.      *Sufficiency of the Evidence*

*a.  Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense

raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16).

Michigan law provides, in relevant part,

> (1) Except as authorized by this article, a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance . . . .
> (2) A person who violates this section as to:
> (a) A controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section 7214(a)(iv) and:
> (I) Which is in an amount of 1,000 grams or more of any mixture containing that substance is guilty of a felony punishable by imprisonment for life or any term of years or a fine of not more than $1,000,000.00, or both.

MICH. COMP. LAWS § 333.7401. Michigan law further provides that a "person who conspires together with 1 or more persons to commit an offense prohibited by law . . . is guilty of the crime of conspiracy." MICH. COMP. LAWS § 750.157a. Petitioner was convicted of both possessing with intent to deliver 1,000 grams or more of cocaine under § 333.7401(2)(a)(I) and conspiracy to possess with intent to deliver 1,000 grams or more of cocaine.

With respect to the possession with intent to deliver charge, the prosecution was required to prove beyond a reasonable doubt: "1) that the substance in question was cocaine, or a mixture containing cocaine, 2) that the cocaine or mixture containing cocaine weighed [1,000 grams or more],

17

3) that the defendant was not authorized to possess the cocaine or mixture containing cocaine, and 4) that the defendant knowingly possessed the cocaine with intent to deliver it." *Towns v. Jackson*, 287 F. Supp. 2d 749, 755 (E.D. Mich. 2003) (Duggan, J.) (citing *People v. Acosta*, 153 Mich. App. 504, 511, 396 N.W.2d 463 (1986)).   Under Michigan law, a person need not have actual physical possession of a drug to be convicted of a possession offense.   Rather, it is sufficient that he have constructive possession, meaning the ability to exercise dominion and control over the drugs.   *See Towns*, 287 F. Supp. 2d at 755-56; *People v. Johnson*, 466 Mich. 491, 500, 647 N.W.2d 480, 486 (2002); *People v. Wolfe*, 440 Mich. 508, 519-20, 489 N.W.2d 748, 753 (1992).   Circumstantial evidence is sufficient to establish constructive possession, and constructive possession may be found when the totality of the circumstances indicates a nexus between the defendant and the contraband. *See Wolfe*, 440 Mich. at 520-21, 489 N.W.2d at 753-54.   Further, Mich. Comp. Laws § 767.39 abolished the common law distinction between aiders and abettors and principals, and provides that aiders and abettors may be prosecuted and convicted as though they had directly participated in the crime. *See People v. Palmer*, 392 Mich. 370, 378, 220 N.W.2d 393, 396 (1974). Aiding and abetting under Michigan law requires proof of three elements: (1) commission of the underlying crime either by the defendant or some other person; (2) acts or encouragement by the defendant which aided or assisted the commission of the crime; and (3) intent on the part of the defendant to commit the crime or knowledge by the defendant that the principal intended to commit the crime at the time aid or encouragement was given. *See Acosta*, 153 Mich. App. at 511-12, 396 N.W.2d at 467.   In the possession with intent to deliver context, the prosecution must prove that the defendant knowingly aided in the possession while having the intent to deliver the controlled substance or knowing of the principal's intent to deliver the controlled substance.   *See Mass*, 464 Mich. at 628, 628 N.W.2d at

18

548.

> With respect to the conspiracy conviction, under Michigan law
>
> [c]riminal conspiracy is a mutual understanding or agreement between two or more persons, expressed or implied, to do or accomplish some criminal or unlawful act.
>> The gist of the offense lies in the unlawful agreement between two or more persons to do the unlawful act.  All the requisite elements of the crime of conspiracy are met when the parties enter into the mutual agreement, and no overt acts necessarily must be established.

*People v. Hamp*, 110 Mich. App. 92, 102, 312 N.W.2d 175, 180 (1981) (citations omitted); *see also*, *People v. Buck*, 197 Mich. App. 404, 412, 496 N.W.2d 321, 327 (1992), *rev'd in part on other grounds sub nom. People v. Holcomb*, 444 Mich. 853, 508 N.W.2d 502 (1993).  Thus, "[t]o be convicted of conspiracy to possess with intent to deliver a controlled substance, the people must prove that (1) the defendant possessed the specific intent to deliver the statutory minimum as charged, (2) his coconspirators possessed the specific intent to deliver the statutory minimum as charged, and (3) the defendant and his coconspirators possessed the specific intent to combine to deliver the statutory minimum as charged to a third person."  *People v. Hunter*, 466 Mich. 1, 6, 643 N.W.2d 218, 221 (2002) (quoting *People v. Justice*, 454 Mich. 334, 349, 562 N.W.2d 652, 659 (1997)).  However, "direct proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties.  Inferences may be made because such evidence sheds light on the coconspirators' intentions."  *Justice*, 454 Mich. at 347, 562 N.W.2d at 659 (citation omitted); *see also*, *Cameron v. Birkett*, 348 F. Supp. 2d 825, 839 (E.D. Mich. 2004) (Gadola, J., adopting Report of Komives, M.J.); *People v. Cotton*, 191 Mich. App. 377, 393, 478 N.W.2d 681, 688 (1991);. "'A two-fold specific intent is required for conviction: intent to combine with others, and intent to accomplish the illegal objective.'"  *Cameron*, 348 F. Supp. 2d at 839 (quoting *People v. Carter*, 415 Mich. 558, 568, 330 N.W.2d 314, 319 (1982)).

*b. Analysis*

With respect to the conspiracy charge, petitioner does not contend that there was insufficient proof of the existence of a conspiracy to possess with intent to deliver over 1,000 grams of cocaine. Rather, he contends that the prosecution failed to present sufficient evidence to prove that he was a part of this conspiracy. Specifically, he argues that the only evidence of his involvement came from Cottleon (a/k/a Herrera), whose testimony was not credible. The Michigan Court of Appeals rejected this claim, explaining:

> Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that defendant conspired with others to deliver 1,000 or more grams of cocaine. Defendant and the charged coconspirators came to Michigan from Arizona. While in Arizona, through Jesus Ramon Cottleon, Jamie Cardenas met with codefendant Hugo Moran-Dopico to discuss trafficking a large quantity of cocaine in the Detroit area. Thereafter, Moran-Dopico and Cottleon flew from Arizona to Detroit together and met with their drug connection. In Detroit, the codefendants arranged a deal for the delivery of ten kilograms of cocaine to be delivered within a few days. Moran-Dopico remained in Detroit, while Cottleon returned to Arizona. Soon thereafter, an Explorer containing the cocaine, driven by codefendant Antonio Perez-Chica, left Arizona. Defendant and Cottleon also left Arizona en route to Michigan in a white Durango, following the Explorer for the purpose of delivering the cocaine. Defendant told Cottleon that the cocaine was in the Explorer. Once in Detroit, defendant and Cottleon met Moran-Dopico and their drug connection. Defendant had been communicating with Perez-Chica via cellular phone. Defendant ultimately contacted Perez-Chica to learn the location of the Explorer, and advised Cottleon that he would drive the Explorer with the cocaine to the drug distributor's house. Defendant then traveled with Cottleon to a hotel, where Cottleon took control of the Explorer as planned. When Cottleon was arrested, he was en route to meet Moran-Dopico to deliver the cocaine to the drug distributor. Two days after the police seized the cocaine in the Explorer, the Durango was stopped heading toward Arizona. Defendant was in the vehicle with Moran-Dopico.
>
> This evidence established a basis for the jury to conclude that defendant conspired with others to deliver the cocaine found in the Explorer. Defendant's behavior and his associates' interactions provided evidence of their concert of action, which created an inference of conspiracy. Further, the credibility of Cottleon's testimony was for the jury to determine. Viewed most favorably to the prosecution, the evidence was sufficient to support defendant's conviction of conspiracy to deliver 1,000 or more grams of cocaine.

*Cardenas-Borbon*, 2008 WL 5003030, at \*1-\*2.  This determination was reasonable.

Cottleon's testimony alone, if believed by the jury, was sufficient to prove beyond a reasonable doubt the existence of the conspiracy and petitioner's participation in it.  While petitioner challenges Cottleon's credibility, as explained above witness credibility is solely the province of the trier of fact.  A reviewing court may reverse a jury's credibility determinations only where the testimony is incredible as a matter of law, "such as where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all."  *United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) (internal quotation omitted); *accord United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009); *United States v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993).  Here, it was not physically impossible for Cottleon to have observed what he claimed to have observed, nor was his testimony contrary to the laws of nature.  The fact that Cottleon, by virtue of his plea deal, may have had a motive to fabricate raises a credibility question to be resolved by the finder of fact, but it does not render his testimony incredible as a matter of law.  *See United States v. Alcantar*, 83 F.3d 185, 189 (9th Cir. 1996) ("[T]estimony is not incredible as a matter of law . . . only because the witness may have been impeached . . . by the existence of a motive to provide evidence favorable to the government.").  Moreover, circumstantial evidence of petitioner's involvement buttressed Cottleon's testimony, showing substantial contacts between petitioner and the members of the conspiracy.  As noted above, the *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses.  The jury, as the finder of fact, was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of

the prosecution.  In light of Cottleon's testimony, the verdict was not "so insupportable as to fall below the threshold of bare rationality."  *Coleman*, 132 S. Ct. at 2065.  It therefore follows that the Michigan Court of Appeals's rejection of this claim was reasonable.

> With respect to the possession conviction, the Michigan Court of Appeals concluded that

> the same evidence that enabled the jury to conclude that defendant conspired with others to possess and deliver the cocaine also established a proper basis for the jury to conclude beyond a reasonable doubt that defendant possessed the cocaine with the intent to deliver it.  A jury could have reasonably inferred from defendant's actions and associations that he constructively possessed the cocaine found in the Explorer.

*Cardenas-Borbon*, 2008 WL 5003030, at *3.  This determination was reasonable.  At a minimum, Cottleon's testimony established that petitioner aided and abetted his coconspirators' possession of the cocaine that was recovered by the police, and the evidence established an intent to deliver the drugs to an associate of Moran-Dopico.  Petitioner's challenge to his conviction on the possession count, like his challenge to his conviction on the conspiracy count, is based on his argument that Cottleon was not credible.  As explained above, this argument is without merit.  Thus, the Michigan Court of Appeals's rejection of petitioner's sufficiency of the evidence claim with respect to the possession conviction was reasonable.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his weight and sufficiency of the evidence claims.

F.      *Joint Trial (Claim III)*

Petitioner next contends that he was denied a fair trial by the trial court's failure to sever his trial from that of his codefendants.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

As a general matter, there is no constitutional right to severance.  In *Zafiro v. United States*,

506 U.S. 534 (1993), the Court considered "whether Rule 14 [of the Federal Rules of Criminal Procedure] requires severance as a matter of law when codefendants present 'mutually antagonistic defenses.'" *Zafiro*, 506 U.S. at 535. Thus, *Zafiro* did not establish any rule of constitutional law, and is inapplicable to petitioner's state court conviction. *Cf. Williams v. Singletary*, 114 F.3d 177, 181 (11th Cir. 1997) (noting that *Zafiro* involved an interpretation of the Federal Rules of Criminal Procedure and thus "it is not at all clear that *Zafiro* establishes a rule of constitutional law to be applied to state court judgments in § 2254 proceedings," but finding it unnecessary to resolve the question); *Henry v. Scully*, 918 F. Supp. 693, 714 n.7 (S.D.N.Y. 1995) ("Petitioner's counsel argues that Henry's trial counsel erred in failing to request a severance. This argument, which depends upon Henry's having had a constitutional right to a severance, is without merit. Henry has shown no federal constitutional right to a severance.").

Thus, habeas relief will be warranted for a trial court's failure to sever a petitioner's trial from that of his codefendants only where the denial itself deprives the petitioner of a fundamentally fair trial. In other words, "a state trial court's refusal to grant severance mandates habeas corpus relief (1) when the joint trial 'resulted in the deprivation of a specific constitutional guarantee such as the right to call witnesses . . . or the right to confrontation,' or (2) when the joint trial abridged the defendant's 'fundamental right to a fair trial as secured by the Fourteenth Amendment.'" *Turpin v. Kassulke*, 26 F.3d 1392, 1404 (6th Cir. 1992) (Feikens, D.J., concurring in part and dissenting in part) (quoting *Jenkins v. Bordenkircher*, 611 F.2d 162, 168 (6th Cir. 1979)); *accord Hutchinson v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002). Where the denial of a specific constitutional right is not involved, a failure to sever results in a denial of a fair trial only if there "is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at

23

539. Under this prong of the test, severance is generally mandated only in three situations: (1) where there is compelling evidence admitted against a codefendant which would not otherwise be admissible against the defendant; (2) where the sheer number of defendants and charges makes it impossible for the jury to separate the issues involved; and (3) where the defendant's involvement in the crime is significantly different in scope or magnitude from that of his codefendants. *See United States v. Blankenship*, 382 F.3d 1110, 1123-25 (11th Cir. 2004). However, joint trials are favored, and the potential for prejudice alone is insufficient to mandate severance. *See Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001).

    2.    *Analysis*

The Michigan Court of Appeals rejected petitioner's claim, concluding that petitioner was not denied a fair trial by being tried jointly with his codefendants. The court reasoned:

> The charges against defendant and codefendants Perez-Chica and Moran-Dopico arose out of a single criminal episode that involved numerous witnesses and substantially identical evidence. To hold separate trials in these substantially identical cases would have been unnecessarily duplicative. The interests of justice and judicial economy clearly called for a joint trial in this case. Further, defendant has not demonstrated that his substantial rights were prejudiced by the joint trial, and the record does not show any "significant indication" that the requisite prejudice in fact occurred. All of the defendants claimed to have no knowledge that the cocaine was in the Explorer. In addition, because each defendant was charged with conspiracy, the prosecutor would have been entitled to present the same evidence in separate trials. Finally, the trial court instructed the jury on reasonable doubt and the determination of guilt or innocence, and cautioned the jury that each case had to be considered and decided on the evidence as it applied to each individual defendant.

*Cardenas-Borbon*, 2008 WL 5003030, at *4 (citations omitted). This determination was reasonable.

Petitioner has identified no constitutional rights which he was denied by the failure of the trial court to sever his case from those of his codefendants, nor has he shown that he was denied a fair trial. Petitioner does not point to any evidence admissible only against his codefendant which was

admitted at his trial, nor does he claim that the procedure employed by the trial court prevented him from presenting any evidence or cross-examining any witnesses. Petitioner has thus failed to point to specific instances of prejudice resulting from the failure to sever his trial. *See Vincent v. Seabold*, 226 F.3d 681, 691 (6th Cir. 2000). Rather, petitioner contends only that because of the scope and complexity of the case, he was denied a fair trial because, unlike in a separate trial, his guilt alone was not the sole focus of the jury. However, the quantum and type of evidence against petitioner and his codefendants were similar, the charges were not numerous or complex, and the scope of petitioner's involvement (as testified to by Cottleon) was not significantly less than that of his codefendants. Further, the trial court properly instructed the jury on the burden of proof and instructed the jury that it must consider each charge against each defendant separately. *See id.* at 251, 256, 265-66, 275. The jurors are presumed to have followed these instructions, and the instructions therefore ameliorated any potential prejudice. *See Stanford*, 266 F.3d at 459 (citing *Francis v. Franklin*, 471 U.S. at 307, 324 n.9 (1985)).

"The preference for a joint trial is particularly strong" in drug conspiracy cases. *United States v. Saunders*, 553 F.3d 81, 85 (1st Cir. 2009); *see also*, *United States v. Lopez*, 649 F.3d 1222, 1234 (11th Cir. 2011). As the Supreme Court has observed:

> Many joint trials—for example, those involving large conspiracies to import and distribute illegal drugs—involve a dozen or more codefendants.... It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit.

*Richardson v. March*, 481 U.S. 200, 209-10 (1987). Because (a) the charges against petitioner and

25

his codefendants arose out of the same occurrence; (b) the trial court gave appropriate limiting instructions to the jury; (c) "'although the jury had to evaluate a tremendous amount of evidence, the nature of the evidence and the legal concepts involved in the case were not extraordinarily difficult to comprehend;'" and (d) petitioner has failed to demonstrate with "particularity how [he was] injured by a joint trial," petitioner cannot show he was denied a fair trial.  *United States v. Baker*, 10 F.3d 1374, 1388-89 (9th Cir. 1993) (quoting *United States v. Casamento*, 887 F.2d 1141, 1150 (2d Cir. 1989)) (finding no denial of due process in joint trial of 12 defendants charged in a 24-defendant, 44-count indictment, where trial lasted 16 months, covered over 30,000 transcript pages, involved 250 witnesses and thousands of exhibits, and involved over 2,000 drug transactions over an 11-year period), *overruled in part on other grounds by United States v. Nordly*, 225 F.3d 1053 (9th Cir. 2000).  Thus, the Michigan Court of Appeals's rejection of this claim was reasonable, and petitioner was not entitled to habeas relief.  In these circumstances, the Michigan Court of Appeals's conclusion that petitioner was not denied a fair trial by the failure to sever his trial from those of his codefendants was reasonable.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Police/Prosecutorial Misconduct (Claims V, XII-XIII)*

Petitioner next raises several claims of police and prosecutorial misconduct.  In Claim V, petitioner argues that the prosecutor committed misconduct by bringing charges against him that lacked any evidentiary basis and presented the perjured testimony of Cottleon.  In Claim XII, he contends that he was denied a fair trial when the prosecutor referred to him as an illegal alien.  Finally, in Claim XIII, he contends that the prosecutor suppressed evidence.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

26

1.      *Prosecutor's Comments (Claim XII)*

### a. Clearly Established Law

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). *Darden* constitutes "[t]he 'clearly established Federal law' relevant" to a prosecutorial misconduct claim. *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In reviewing whether a prosecutor has deprived a defendant of a fair trial, a court may not consider the prosecutor's conduct in isolation, but must view the conduct in the context of the entire proceedings. *See Brown v. Payton*, 544 U.S. 133, 144 (2005); *United States v. Young*, 470 U.S. 1, 11 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 636, 645 (1974). Even on direct review, where AEDPA deference does not apply, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Young*, 470 U.S. at 11.

### b. Analysis

Petitioner contends that he was denied a fair trial by the prosecutor's references to his status as an illegal immigrant. Petitioner, however, does not cite to any part of the transcript in which the prosecutor referred to his immigration status. *See Avincola v. Stinson*, 60 F. Supp. 2d 133, 161

(S.D.N.Y. 1999) (petitioner claiming that prosecutor made improper comments must identify particular statements which he contends were improper). Counsel for petitioner's codefendants did, during *voir dire*, explain to the jury that each of their clients were illegal immigrants and asked whether this would affect the jurors' ability to be fair and impartial. No mention was made of petitioner's immigration status, either by the prosecutor or any of the defense counsel. Thus, petitioner's claim is without merit.

2.    *Perjury (Claim V)*

Petitioner next claims that he was denied a fair trial because the prosecutor presented perjured testimony, and suppressed evidence of Cottleon's favorable plea deal. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

*a. Clearly Established Law*

It is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *accord Napue v. Illinois*, 360 U.S. 264, 271 (1959). This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, *see Napue*, 360 U.S. at 270, and it matters not whether the prosecution directly elicits the false testimony or merely allows false testimony to go uncorrected, *see id.* at 269. To succeed on this claim petitioner must show that: (1) the prosecutor presented evidence which was false; (2) the prosecutor knew of the falsity; and (3) the evidence was material. *See Coe v. Bell*, 161 F.3d 320, 343

With respect to the first element, it is well established that petitioner bears the burden of proving that the testimony amounted to perjury. As the Fourth Circuit has explained, "[a] defendant

28

seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured.   Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*, 424 F. Supp. 307, 318 (N.D. Cal. 1976).  (6th Cir. 1999).  As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'").  In other words, petitioner must show that the testimony was "indisputably false." *Byrd v. Collins*, 209 F.3d 486, 817-18 (6th Cir. 2000).

With respect to the second element, as the Sixth Circuit has explained in order for a witness's perjury at trial to constitute a basis for habeas relief, the petitioner must show "prosecutorial involvement in the perjury." *Burks v. Egeler*, 512 F.2d 221, 229 (6th Cir. 1975).  The Sixth Circuit has repeatedly reaffirmed the requirement that a petitioner show prosecutorial involvement in or knowledge of the perjury. *See, e.g.*, *Rosencrantz v. Lafler*, 568 F.3d 583-84 (6th Cir. 2009); *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000); *King v. Trippett*, 192 F.3d 517, 522 (6th Cir. 1999); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998); *Ford v. United States*, No. 94-3469, 1994 WL

521119, at *2 (6th Cir. Sept. 23, 1994); *Akbar v. Jago*, No. 84-3540, 1985 WL 13195, at *1 (6th Cir. Apr. 10, 1985); *Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir. 1975). And the Supreme Court has repeatedly characterized the Due Process Clause only as barring conviction on the basis of perjury known by the prosecution to be such. *See, e.g.*, *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (emphasis added) ("[I]t is established that a conviction obtained through use of false evidence, *known to be such by representatives of the State*, must fall under the Fourteenth Amendment."); *United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added) (due process is violated by the "*knowing* use of perjured testimony."); *see id*. at 103-04 & nn. 8-9 (discussing cases). At a minimum, "[t]he Supreme Court has never held that due process is offended by a conviction resting on perjured testimony where the prosecution did not know of the testimony's falsity at trial." *LaMothe v. Cademartori*, No. C 04-3395, 2005 WL 3095884, at *5 (N.D. Cal. Nov. 11, 2005) (citing *Jacobs v. Scott*, 513 U.S. 1067 (1995) (Stevens, J., dissenting from denial of certiorari) (noting that the Supreme Court has yet to consider the question of whether due process is violated by a conviction based on perjured testimony regardless of the prosecutor's knowledge)); *cf. Briscoe v. LaHue*, 460 U.S. 325, 326 n. 1 (1983) ("The Court has held that the prosecutor's knowing use of perjured testimony violates due process, but has not held that the false testimony of a police officer in itself violates constitutional rights.").

### b. Analysis

Petitioner contends that Cottleon's testimony at trial was false, and that the prosecutor knew his testimony to be false because Cottleon had previously lied to the police. The Michigan Court of Appeals rejected this claim, explaining:

> Defendant has failed to show that Cottleon's trial testimony was actually false. Although Cottleon made inconsistent statements before trial, the jury was aware of

those inconsistencies.  The prosecutor told the jury in opening statement that "at times [Cottleon] has been deceitful."  "I'm telling you from the get go [Cottleon] isn't completely truthful with the officers . . .  I'm going to have to pick through what's a lie and what's not."  During trial, Cottleon admitted that he had used several aliases.  He further admitted that he had lied previously, including lying in police interviews on numerous occasions.  He claimed that he initially lied because he was "trying to protect [defendant]" and he "thought Jamie was going to help him with an attorney."  At one point during the investigation, he "also feared that [his] family would be harmed" because they were threatened.  In addition, Cottleon explained the scope of the sentencing agreement under which he testified against defendant. . . .

Under the circumstances, defendant's challenge to Cottleon's testimony involves a matter of witness credibility, which was for the jury to decide.  The problems with Cottleon's credibility were plainly presented to the jury.  The record discloses that defense counsel vigorously attacked Cottleon's credibility and thoroughly explored his motivation to lie.  Additionally, the trial court's instructions protected defendant's rights.  There is simply no tangible indication that the prosecutor engaged in misconduct . . . .

*Cardenas-Borbon*, 2008 WL 5003030, at *6 (citation and footnote omitted) (alterations in original).

This determination was reasonable.

There is no doubt that Cottleon was not the most credible of witnesses, nor is there any doubt that Cottleon at times lied.  However, beyond the general credibility problems with Cottleon's testimony, he has offered nothing that shows that Cottleon's trial testimony, as opposed to other statements he may have made, was "indisputably false" and thus amounted to perjury.  Inconsistencies between Cottleon's testimony and his prior statements does not by itself establish that Cottleon committed perjury at petitioner's trial.  Further, petitioner has not shown that the prosecutor knew of any allegedly false testimony.  Speculative allegations of prosecutorial knowledge are insufficient to establish a *Napue/Giglio* claim.  *See Skains v. California*, 386 Fed. Appx. 620, 621-22 (9th Cir. 2010).  Because petitioner has failed to establish that Shelby's testimony was "indisputably false," *Byrd*, 209 F.3d at 817-18, or that the prosecutor knew of any such falsity, the Michigan Court of Appeals's rejection of petitioner's claim was reasonable.  Accordingly, the Court should conclude

31

that petitioner is not entitled to habeas relief on this claim.

3.       *Suppression (Claim XIII)*

Petitioner next contends that the he was denied a fair trial by the prosecutor's suppression of Cottleon's expectation of leniency.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

*a.  Clearly Established Law*

In *Napue v. Illinois*, 360 U.S. 264, 268-69 (1959) and *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), the Supreme Court held that a defendant's right to a fair trial under the Fourteenth Amendment may be violated where the prosecution deliberately misleads a jury, or allows misleading testimony to go uncorrected, with respect to any promises offered a key prosecution witness in exchange for his testimony.  A *Napue/Giglio* violation is a subset of a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), in which the Court held that "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.* at 87.  "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt.  *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler*

*v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972).  Petitioner

bears the burden of establishing each of these three elements.  *See Carter*, 218 F.3d at 601.

*b.  Analysis*

Petitioner is not entitled to habeas relief on this claim because, as the Michigan Court of

Appeals correctly observed,

> the record shows that the prosecutor disclosed Cottleon's 'expectation of leniency.'
> During his testimony, Cottleon testified that he understood that he would receive a
> minimum sentence of seven years in exchange for his testimony.  Immediately
> thereafter, the court advised the jury that Cottleon had been charged with possession
> with intent to deliver 1,000 or more grams of cocaine and that, pursuant to an
> agreement, he would testify against the other defendants in exchange for a minimum
> sentence.  In its final instructions, the court reiterated the charges against Cottleon and
> again explained the sentencing agreement under which he had agreed to testify.

*Cardenas-Borbon*, 2008 WL 5003030, at *8; *see also*, Trial Tr., dated 12/1/06, at 23-25, 120-21, 129,

216-18; Trial Tr., dated 12/8/06, at 16-17.  Because Cottleon's deal with the prosecution was fully

disclosed to the jury, petitioner is not entitled to habeas relief on this claim.

H.       *Bindover/Jurisdiction (Claims VI, XIV, XVII-XVIII, XX, and XXIV(A), (D), (E))*

Petitioner next raises several challenges to his bindover to the circuit court on the charges and

to the circuit court's jurisdiction to try him.  In Claims VI and XVIII, he contends that the trial court

erred in failing to quash the information because there was insufficient probable cause to support the

charges.  In Claim XIV, petitioner contends that the prosecution suppressed evidence or presented

false evidence regarding Cottleon's first contacts with the police at the preliminary examination.  In

Claim XVII, petitioner argues that there was not probable cause to support his arrest.  In Claim XX,

petitioner contends that the trial court lacked personal jurisdiction over him.  Claim XXIV(A), (D),

and (E) reiterate the arguments made in petitioner's previous claims.  For the reasons that follow, the

Court should conclude that petitioner is not entitled to habeas relief on these claims.

33

1.      *Probable Cause for Arrest and Bindover*

Petitioner first argues that there was a lack of probable cause to support either his arrest or his bindover to the circuit court for trial on the charges, and that the prosecution either withheld evidence or presented false evidence at the preliminary examination.  These claims provide no basis for habeas relief.  It is an "established rule that illegal arrest or detention does not void a subsequent conviction."  *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)).  Thus, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause."  *Gerstein*, 420 U.S. at 119.  Because petitioner is now incarcerated pursuant to a valid conviction, he cannot challenge his conviction on the basis that he was arrested without probable cause or on the basis of an alleged defect in the state court's preliminary procedures.  *See, e.g.*, *Montoya v. Scott*, 65 F.3d 405, 421 (5th Cir. 1995); *Biby v. Satran*, 619 F. Supp. 1563, 1567-68 (D.N.D. 1985).  Thus, even if the prosecution presented perjured testimony at the preliminary examination, this would not call into question the validity of petitioner's subsequent conviction.  *See Gollman v. Metrish*, No. 5:08-cv-10221, 2009 WL 1034935, at *12 (E.D. Mich. Apr. 17, 2009) (O'Meara, J.).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his claims relating to the validity of his arrest and bindover.

2.      *Jurisdiction*

Petitioner next contends that the trial court lacked jurisdiction over him.  This claim is likewise without merit.  It is well-established that habeas review does not extend to questions of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the

province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws.").  "A determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam); *accord Rhode v. Olk-Long*, 84 F.3d 284, 287 (8th Cir. 1996); *Wesselman v. Seabold*, 834 F.2d 99, 102 (6th Cir. 1988); *United States ex rel. Holliday v. Sheriff of Du Page County, Ill.*, 152 F. Supp. 2d 1004, 1013 (N.D. Ill. 2001).  As the Supreme Court has long explained, "there is nothing in the clauses of the 14th Amendment guarantying [sic] due process and equal protection which converts an issue respecting the jurisdiction of a state court under the Constitution and statutes of the state into anything other than a question of state law[.]" *Gasquet v. Lapeyre*, 242 U.S. 367, 369 (1917).  Whether an indictment, information, or complaint is sufficient to confer jurisdiction on a trial court is likewise an issue of state law which is not cognizable on habeas review.  *See McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994); *Rose v. Johnson*, 141 F. Supp. 2d 661, 694 (S.D. Tex. 2001).  Challenges to the sufficiency of a state court charging document will be cognizable on federal habeas review only where the amendment deprives a petitioner of his due process right to fair notice of the charges against him.  *See Boothe v. Wyrick*, 452 F. Supp. 1304, 1310 (W.D. Mo. 1978).  Petitioner does not contend that he lacked notice of the charges against him, and thus any defect in the complaint raises an issue of state law not cognizable on habeas review.  *See Hill v. Ludwick*, No. 2:09-cv-11748, 2011 WL 5244824, at *5 (E.D. Mich. Nov. 3, 2011) (Roberts, J.).

Although not entirely clear, it appears that petitioner argues that the Michigan courts lacked jurisdiction over him.  To the extent he claims that he was illegally tried in Michigan because he was

arrested outside the state, the claim is without merit.  As explained above, it is an "established rule that illegal arrest or detention does not void a subsequent conviction." *Gerstein*, 420 U.S. at 119 (citing *Frisbie*, 342 U.S. 519; *Ker*, 119 U.S. 436).  In *Frisbie*, the Court applied this rule to reject a claim that the defendant's conviction was void by the fact that he was forcibly abducted from one state to another to secure his presence for trial.  The Court explained that "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' . . . [D]ue process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." *Frisbie*, 342 U.S. at 522.  Under *Ker* and *Frisbie*, "the manner by which a defendant is brought to trial does not affect the government's ability to try him," *United States v. Matta-Ballesteros*, 71 F.3d 754, 762 (9th Cir. 1995), and thus petitioner is not entitled to habeas relief on this claim.

I.    *Expert Witness (Claim XI)*

Petitioner next contends that he was denied a fair trial when a DEA agent was permitted to testify as an expert concerning aspects of the narcotics trade.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

Unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional violation.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483,

36

487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994); *see also, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983). This general rule regarding the limited cognizability of evidentiary claims on federal habeas review applies equally to claims based on the allegedly improper admission of scientific evidence. *See, e.g.*, *Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998); *Spencer v. Murray*, 18 F.3d 237, 239 (4th Cir. 1994); *Arnold v. Wyrick*, 646 F.2d 1225, 1228 (8th Cir. 1981); *Albanese v. McGinnis*, 823 F. Supp. 521, 553 (N.D. Ill. 1993).

2.      *Analysis*

Here, petitioner cannot show that the expert testimony deprived him of a fair trial.  The Michigan Court of Appeals determined that this evidence was properly admitted as a matter of state law, explaining  that "a law enforcement officer may testify as an expert on drug-related law enforcement by virtue of his training and experience," and reasoning that in petitioner's case "the agent's training and experience in the area of narcotics trafficking qualified him to testify about the significance of the quantity of drugs recovered and other aspects of drug trafficking[,] [and his] knowledge of the drug trade was used to help the jury understand the significance of the amount of cocaine at issue and the complexity of drug trafficking conspiracies." *Cardenas-Borbon*, 2008 WL 5003030, at *7.  As a general rule, "evidence of the practices of drug traffickers is admissible evidence." *Valasquez v. Lafler*, No. 05-73281, 2008 WL 3200290, at *9 (E.D. Mich. Aug. 5, 2008) (Roberts, J.) (citing *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2008); *United States v. Pearce*, 912 F.2d 159, 163 (6th Cir. 1990)).  Both Michigan and federal courts routinely allow police officers to testify that certain factors are indicative of an intent to distribute, rather than mere possession for personal use.  *See People v. Murray*, 234 Mich. App. 46, 53-54, 593 N.W.2d 690, 693 (1999); *People v. Stimage*, 202 Mich. App. 28, 29-30, 507 N.W.2d 778, 780 (1993); *cf. United States v. Butler*, 265 F.3d 464, 471-72 (6th Cir. 2001).  Because the agent's testimony was admissible and relevant to the issues involved in the case, petitioner cannot show that he was denied a fair trial.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.      *Jury Instructions (Claims XV-XVI and XXIV(B), (C))*

Petitioner next raises several challenges to the jury instructions.  In Claims XV and XXIV(B), petitioner contends that the trial court gave a jury instruction that biased the jury against him.  In

Claims XVI and XXIV(C), petitioner contends that the trial court erred in failing to give a curative instruction regarding testimony that his family had threatened Cottleon.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

       1.     *Legal Standard*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.  *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990).  In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief.  *See Estelle*, 502 U.S. at 71-72.

       2.     *Analysis*

                    *a.  Biased Jury Instruction*

Petitioner first contends that the trial court gave an instruction that biased the jury against him.  During *voir dire*, petitioner's counsel attempted to get a feel for the panel members'

understanding of the presumption of innocence and the burden of proof, resulting in the following

exchange:

| | |
|---|---|
| MR. FLORES: | Now, I know the Judge and Mr. Fedorak also touched on the burden of proof but if I were to ask each and everyone of you right not to vote as to the guilt of Mr. Cardenas-Borbon, how many of you would vote not guilty? |
| THE COURT: | Everybody has to raise their hand. |
| MR. FLORES: | I appreciate that. |
| THE COURT: | Counsel, let me interrupt just one second.  A person is presumed innocent until proven guilty beyond a reasonable doubt.  You haven't heard any testimony other than what the lawyers have said and I'm going to instruct you that what the lawyers say is not evidence. Evidence comes from the witness stand, so if you had to vote right now, no one should hesitate they're not guilty. |
| MR. FLORES: | I appreciate that and I can tell you this, out of all the jurors, potential jurors that I asked that, I think you are definitely the ones that raised the most hands because it's hard for people to understand the concept but it is true. . . . |

Trial Tr., dated 11/28/06, at 57.  Petitioner contends that the trial court's instruction gave the

impression that all testimony from the witness stand constituted evidence that should be accepted as

true by the jury.  This argument is without merit.

The trial court's admonishment merely reinforced to the jury, to petitioner's benefit, the

concept of the presumption of innocence.  The instruction explained that the jury could only base its

decision on the evidence presented at trial.  Nothing in the trial court's instruction suggested that the

jury was required to accept each statement of a witness as the truth.  On the contrary, in closing

instructions the trial court extensively explained to the jury its role in assessing witness credibility.

The court informed the jury of certain factors it may want to consider in deciding whether a witness

40

was credible, *see* Trial Tr., dated 12/8/06, at 7-8; that if it determined that a witness lied it may choose to disbelieve all of the witness's testimony or may accept some parts and reject others, *see id*. at 8; and that a person accused of a crime is presumed innocent unless proven otherwise beyond a reasonable doubt, *see id*. at 8-9.  More specifically, the court instructed the jury that it "must think about all the evidence and then decide what each piece of evidence means, and how important you think it is.  This includes whether you believe what each of the witnesses said."  *Id*. at 3.  The court reiterated this point, explaining: "[I]t is your job to decide what the facts of this case are.  You must decide which witnesses you believe and how important you think their testimony is.  You don't have to accept or reject everything a witness said.  You are free to believe all, none or part of any person's testimony."  *Id*. at 6-7.  In light of these detailed instructions informing the jury that it need not accept any testimony that it believed to be not credible, petitioner cannot show that the trial court's preliminary instruction that only testimony from the witnesses constituted evidence would have led the jury to conclude that it must accept as truth anything said by a witness while testifying.  Thus, petitioner cannot show that the trial court's preliminary instruction deprived him of a fair trial, and he is not entitled to habeas relief on this claim.

### b. *Failure to Give Curative Instruction*

Petitioner next contends that he was denied a fair trial by the trial court's failure to give a curative instruction regarding a threat made to Cottleon's family.  During direct examination, the prosecutor asked Cottleon about his second statement to the police after he had first denied any knowledge of drug trafficking.  Cottleon testified that he requested to speak again with the police "because people started threatening my family."  Trial Tr., dated 12/1/06, at 83.  Petitioner's counsel objected, and a sidebar was held, after which no further mention was made of this threat.  Following

Cottleon's direct testimony, and before cross-examination, the trial court heard argument on the matter outside the presence of the jury.  Petitioner's counsel indicated that he wished to bring out on cross-examination that petitioner did not make this threat; rather, it was made by one of the codefendants (identified in the jail report of the incident as Perez-Chica).  However, counsel was worried about the effect of such testimony on the rights of the codefendants.  *See id*. at 96-97.  All counsel eventually agreed that a curative instruction would be appropriate, with the prosecutor and the trial judge suggesting various formulations.  The trial judge said that he would try to fashion language for an appropriate jury instruction, but would not give it before cross-examination.  *See id*. at 103-05.  Neither petitioner's counsel nor the other defense counsel returned to the matter on cross-examination, and it does not appear that any curative instruction was ever given.  However, at the conclusion of the court's instructions to the jury, all counsel indicated that they were satisfied with the court's instructions.  *See* Trial Tr., dated 12/8/06, at 31.  Petitioner contends that he was denied a fair trial by the absence of this instruction.

The Court should conclude that petitioner is not entitled to habeas relief on this claim.  While counsel initially requested a curative instruction, it appears that counsel was ultimately satisfied that an instruction was not necessary, having not pressed the matter further and having expressed satisfaction with the trial court's instructions to the jury.  Further, Cottleon's testimony was vague and limited.  It did not identify the source or nature of the threat to his family, and was a brief, unsolicited response on a matter to which neither the prosecutor nor any of the defense counsel returned.  Cottleon's testimony itself took an entire day covering over 200 transcript pages, out of a trial that involved five days of testimony.  Further, there was no error in the admission of this testimony.  It is well-established that evidence of threats, even if not made by the defendant, are

42

admissible to explain a witness's demeanor or inconsistent testimony.  *See, e.g.*, *United States v. Thadsamany*, 305 Fed. Appx. 942, 944 (4th Cir. 2009); *United States v. Doddles*, 539 F.3d 1291, 1296 (10th Cir. 2008); *People v. Clark*, 124 Mich. App. 410, 412, 335 N.W.2d 53, 54 (1983).[2]  In light of the nature and extent of the testimony at trial, Cottleon's brief, unadorned statement that a threat had been made did not deprive petitioner of a fair trial.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

K.    *Fair Cross Section (Claim XXI)*

In his twenty-first claim, petitioner argues that he was denied his Sixth Amendment right to a jury drawn from a fair cross-section of the community.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Legal Standard*

The Sixth Amendment guarantees a criminal defendant the right to be tried before a jury drawn from a fair cross-section of the community.  *See Duren v. Missouri*, 439 U.S. 357, 359 (1979); *Taylor v. Louisiana*, 419 U.S. 522, 526-31 (1975).

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Duren*, 439 U.S. at 364.  Petitioner bears the burden of establishing each element of the *prima facie*

---

[2]Where threat evidence is introduced to show a defendant's consciousness of guilt, the threat must have come from defendant or someone acting at his direction.  *See United States v. Gatto*, 995 F.2d 449, 455 (3d Cir. 1993).  However where, as here, the evidence is introduced to explain a witness's demeanor or inconsistent testimony, "it [is] unnecessary for the prosecutor to convince the jury of a connection between [the person making the threat] and the defendant[]."  *Id.  See generally*, *United States v. Thomas*, 86 F.3d 647, 653-54 (7th Cir. 1996).

fair-cross section claim, including underrepresentation and systematic exclusion.  *See Berghuis v.*

*Smith*, 130 S. Ct. 1382, 1395 (2010); *Duren*, 439 U.S. at 364.

       2.     *Analysis*

      Here, petitioner has failed to establish a *prima facie* fair cross-section claim.  He bases his

claim solely on the fact that there were no Hispanics on the jury venire from which his trial jury was

drawn.  Even assuming the truth of this assertion, it is insufficient to establish a fair cross-section

claim.  It is well established that "[e]vidence of a discrepancy on a single venire panel cannot

demonstrate systematic exclusion."  *United States v. Horne*, 4 F.3d 579, 588 (8th Cir. 1993); *accord*

*United States v. Williams*, 264 F.3d 561, 568 (5th Cir. 2001); *United States v. Hill*, 197 F.3d 436, 445

(10th Cir. 1999); *United States v. DeFries*, 129 F.3d 1293, 1301 (D.C. Cir. 1997).  Petitioner has

presented no evidence that other venires did not include a fair representation of Hispanics, or that the

method used to draw the jury pool was designed to exclude Hispanics.  *See Williams*, 264 F.3d at

568; *United States v. Green*, 742 F.2d 609, 611 (11th Cir. 1984); *Concepcion v. United States*, 181

F. Supp. 2d 206, 227 (E.D.N.Y. 2002).  Further, none of petitioner's argument addresses the reason

for the alleged underrepresentation of Hispanics on the jury venire.  It is well established that "[i]f

[a distinctive group is] underrepresented on the jury list because of legitimate juror qualifications,

. . . then the . . . jury selection system does not unconstitutionally exclude [that group]."  *Davis v.*

*Warden, Joliet Correctional Inst. at Statesville*, 867 F.2d 1003, 1015 (7th Cir. 1989).  For example,

the courts are unanimous that a state may draw its jurors using voter registration lists, even when a

distinctive group is underrepresented on such lists.  *See id.* (citing cases).  The rationale underlying

these cases is that "[d]iscrepancies resulting from private sector influences rather than affirmative

governmental action do not reflect the constitutional infirmities contemplated by the systematic

44

exclusion prong of *Duren*." *United States v. Rioux*, 930 F. Supp. 1558, 1572 (D. Conn. 1995), *aff'd*, 97 F.3d 648, 658 (2d Cir. 1996); *see also*, *United States v. Cecil*, 836 F.2d 1431, 1446-47 (4th Cir. 1988). Because petitioner has failed to point to any evidence of systematic exclusion of Hispanics, he is not entitled to habeas relief on this claim.

L.     *Speedy Trial (Claim XXII)*

Petitioner next contends that he was denied his right to a speedy trial. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Michigan 180-Day Rule and Federal Speedy Trial Act*

In his state court motion for relief from judgment, petitioner relied solely on Michigan's 180-day rule and the Federal Speedy Trial Act in support of his speedy trial claim. Neither of these statutes provides a basis for habeas relief. The Michigan speedy trial rule, *see* MICH. COMP. LAWS § 780.131; MICH. CT. R. 6.004(D), provides no cognizable basis for federal habeas corpus relief. As the Supreme Court has explained, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *accord Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, as the Third Circuit explained in rejecting a claim similar to petitioner's made under Pennsylvania law:

> Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.
> In this case, Pennsylvania's 180-day rule does not define the contours of the federal constitutional right to a speedy trial.

*Wells v. Petsock*, 941 F.2d 253, 256 (3d Cir. 1991). Other courts have reached the same conclusion

with respect to similar state speedy trial laws. *See Robinson v. Leapley*, 26 F.3d 826, 831 (8th Cir. 1994); *Davis v. Wainwright*, 547 F.2d 261, 264 (5th Cir. 1977); *cf. Norris v. Schotten*, 146 F.3d 314, 328-29 (6th Cir. 1998). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Likewise, the Federal Speedy Trial Act has no applicability to petitioner's state court trial. By its terms, the Speedy Trial Act is implicated only when a defendant is tried for an "offense," 18 U.S.C. § 3161(b), which the Act defines as "any Federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress." 18 U.S.C. § 3172(2). In other words, the Speedy Trial Act applies to the trial of federal crimes in the federal courts. It was thus inapplicable in petitioner's trial, and provides no basis for habeas relief. *See Benefield v. Ryan*, No. CV-11-438, 2012 WL 3228784, at *18 (July 2, 2012), *magistrate judge's report adopted*, 2012 WL 3234117 (D. Ariz. Aug. 6, 2012).

    2. *Sixth Amendment Speedy Trial Right*

*a. Legal Standard*

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. CONST. amend. VI. The Supreme Court has adopted a balancing test for determining whether a delay between arrest or indictment and trial violates the Speedy Trial Clause. Under this test, the Court must balance four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The length of delay and reason for delay factors are closely related. *See id.* at 531. As the Supreme Court has explained, the length of delay factor

is actually a double enquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. This latter enquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time.

*Doggett v. United States*, 505 U.S. 647, 651-52 (1992) (citations omitted); *see also*, *Barker*, 407 U.S. at 530 ("The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."). Although there is no bright-line rule and the delay must be considered in light of the circumstances and complexities of the individual case, delay generally becomes presumptively prejudicial as it approaches one year. *Cf. Doggett*, 505 U.S. at 652 n.1.

With respect to the factor addressing the reason for the delay, the Court explained in *Barker* that "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. As the Ninth Circuit has explained,

the following principles guide attribution of the delay to either the defense or the prosecution. A deliberate attempt to delay proceedings to hamper the defense counts heavily against the government. "A more neutral reason such as negligence or overcrowded courts should be weighed less heavily, but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." On the other hand, delay attributable to the defendant's own acts or to tactical decisions by defense counsel will not bolster defendant's speedy trial argument.

*McNeely v. Blanas*, 336 F.3d 822, 827 (9th Cir. 2003) (citations omitted) (quoting *Barker*, 407 U.S. at 531). In other words, the "portions of delay which are attributable to the defendant or his counsel will not be considered for purposes of determining whether the defendant's right to a speedy trial has been violated." *Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002) (internal quotation omitted).

47

Finally, with respect to the prejudice factor, the Supreme Court has explained that "unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence. Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Doggett*, 505 U.S. at 654 (citations omitted) (quoting *Barker*, 407 U.S. at 532) (alternation in original). When "the portion of the delay attributable to the Government's negligence far exceeds the threshold needed to state a speedy trial claim," the presumption of prejudice grows stronger and therefore the defendant's need to demonstrate actual prejudice diminishes. *Id*. at 658.

### b. Analysis

Petitioner was arrested in late April 2005. Even assuming that it was at this point that petitioner's Sixth Amendment speedy trial right began,[3] petitioner cannot show that his right to a speedy trial was violated when he was not brought to trial until late November 2006.

Here, the delay between arrest and trial was about 17 months. While this is a sufficient delay to trigger an inquiry into the *Barker* factors, it is certainly much less than the delays which courts have recognized as creating a strong presumption of prejudice. *See, e.g.*, *Doggett*, 505 U.S. at 652

---

[3]"[A]s far as the Speedy Trial Clause of the Sixth Amendment is concerned, . . . only 'a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections' of that provision." *United States v. Lovasco*, 431 U.S. 783, 788-89 (1977) (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)). Although it is not clear, portions of the trial testimony suggest that petitioner was originally held under arrest for immigration reasons (although the impetus for this was surely the drug trafficking investigation). Petitioner was not bound over on the charges in state court until November 9, 2005, and was not arraigned until November 15, 2005. Because it does not affect the analysis, the Court may assume that petitioner's arrest–the earliest possible date which petitioner could claim–triggered his Sixth Amendment right to a speedy trial.

(over 8 years); *Barker*, 407 U.S. at 533 (over 5 years); *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992) (5 years). Thus, there is no strong presumption of prejudice. The second and third factors–reason for delay and defendant's assertion of his right–also weigh against a finding of a speedy trial violation. A review of the trial court docket shows that many of the delays were initiated by petitioner himself, or necessitated by the complexities of the trial. According to the docket, a January 18, 2006, pretrial conference was adjourned, with a deadline for motions by the defendants set for March 6. Another pretrial conference was set for March 22, but that conference was adjourned to May 2, with a trial date set for June 6. Petitioner's motions to suppress were filed on April 14, and on June 6 the trial date was adjourned at the request of defense counsel. One of petitioner's co-counsel filed a motion to withdraw on August 4. That motion was granted, as was petitioner's motion to adjourn the trial date, on August 30. On September 6, petitioner's motion to adjourn the trial date until November was granted, based on counsel's participation in another trial. Thus, the bulk of the delay was triggered by petitioner's own motions or counsel's scheduling conflicts. These periods of delay are not attributable to the prosecution. *See United States v. O'Dell*, 247 F.3d 655, 668 (6th Cir. 2001). There is no evidence that the prosecution intentionally delayed the proceedings to gain a tactical advantage. Further, there is no indication in the record that petitioner at any time asserted his speedy trial rights; on the contrary, petitioner (through counsel) requested several adjournments of the trial date.

Finally, with respect to the fourth *Barker* factor, petitioner has made no showing that he was prejudiced by the delay in the trial. As noted above, the "the portion of the delay attributable to the Government's negligence" did not "far exceed the threshold needed to state a speedy trial claim." *Doggett*, 505 U.S. at 658. Thus, any presumption of prejudice was slight at best. Petitioner has

presented no evidence that his defense was impaired by the length of delay.  He points to no

witnesses, testimony, or evidence which was missing from trial as a result of the delay.  *See Robinson*

*v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993) (where delay is not the result of government misconduct

or negligence, defendant "must demonstrate concrete proof of his prejudice.").  And although

petitioner undoubtedly suffered anxiety as a result of being charged, his anxiety is entitled to only

minimal weight in light of the charges against him.  *See Barker*, 407 U.S. at 534 (describing as

"minimal" the prejudice suffered by the defendant having lived "for over four years under a cloud

of suspicion and anxiety"); *United States v. Williams*, 557 F.3d 943, 949 (8th Cir. 2009) (internal

quotation omitted) ("Oppression, anxiety, and concern of the accused are undoubtedly present to

some degree in every case.  However, that alone does not establish prejudice where the defendant

neither asserts nor shows that the delay weighed particularly heavily on him in specific

circumstances.").  In light of the four *Barker* factors, petitioner cannot show that he was denied his

Sixth Amendment right to a speedy trial.  *See, e.g.*, *United States v. Artez*, 290 Fed. Appx. 203, 208

(10th Cir. 2008) (defendant not denied right to speedy trial by five year delay where the defendant

was responsible for most of the delay, he did not timely assert his desire for a speedy trial, and he

failed to show any actual prejudice); *O'Dell*, 247 F.3d at 667-73 (over four year delay did not result

in a speedy trial violation in light of fact that much of delay was caused by government's and

defendant's interlocutory appeals, defendant did not timely assert his speedy trial rights, and

defendant failed to demonstrate any prejudice).  Accordingly, the Court should conclude that

petitioner is not entitled to habeas relief on this claim.

M.     *Ineffective Assistance of Counsel (Claims IV, VII, IX-X, XIX & XXIV)*

Petitioner next raises numerous ineffective assistance of counsel claims.  The Court should

conclude that each of these claims is without merit.

     1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir.

1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2. *Trial Counsel (Claims IV, VII, IX-X & XIX)*

a. *Failure to Properly Argue Motions to Suppress (Claim IV)*

Petitioner first contends that his counsel was ineffective for failing to properly argue his motions to suppress evidence seized from the stop and seizure of his vehicle in Missouri. As the Michigan Court of Appeals explained, counsel filed motions to suppress the evidence seized from the Dodge Durango on various grounds, and "[t]he trial court granted defense counsel's request for an evidentiary hearing to hear testimony from the two officers directly involved." *Cardenas-Borbon*, 2008 WL 5003030, at *4. However, on the day of the hearing, at which the officers were present, the defense attorneys and prosecutor "reached an agreement regarding the 'traffic stop.' Defense counsel stipulated to allow the introduction of only two items recovered from the vehicle: (1) copies of two airline passenger receipts in Cottleon's name, and (2) an insurance card in defendant's name. Defense counsel reserved the right to renew the motions to suppress if the prosecutor attempted to introduce other items that were seized." *Id*. In light of these facts, the court of appeals rejected petitioner's ineffective assistance claim, reasoning:

> [I]t is apparent that after receiving additional information regarding the circumstances of the stop, defendant's arrest, and the search of the vehicle, defense counsel reconsidered the motions and crafted an agreement with the prosecutor to limit what items could be introduced at trial. Defendant has not presented any evidence or viable argument that trial counsel's decision to proceed in this manner was objectively unreasonable or prejudicial. Decisions about defense tactics, including what arguments to make, are presumed to be matters of trial strategy.

*Id*. at *5. The Court should conclude that this determination was reasonable.

The record establishes that counsel was fully aware of the issues involved in the search of petitioner's vehicle, and that counsel sought to challenge the validity of that search. However, upon consideration of all the facts, counsel decided that the best option was to reach an agreement with the prosecutor allowing into evidence only two things uncovered in the search, limiting the potential damage of the evidence should the court reject his motions to suppress. Petitioner has offered

nothing to show that counsel's balancing of the risks in this fashion was anything other than a reasonable trial strategy. Nor can petitioner show that he was prejudiced by counsel's performance. In the first place, petitioner cannot show that a motion to suppress would have been granted. Although petitioner contends that the reason for the traffic stop, an illegal lane change, was pretextual, so long as the officers had probable cause to believe that the traffic violation had in fact occurred their subjective motivations would not invalidate the stop or subsequent search of the vehicle. The Supreme Court's "cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citing *Whren v. United States*, 517 U.S. 806, 812-813 (1996)). Thus, "'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" *Whren*, 517 U.S. at 813 (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)). In other words, the fact that the stop was mere pretext because "the officer who executed the stop had an ulterior law enforcement motive . . . is constitutionally irrelevant." *United States v. Valdez*, 147 Fed. Appx. 591, 594 (6th Cir. 2005); *see also*, *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010); *United States v. Hughes*, 606 F.3d 311, 315-16 (6th Cir. 2010). Further, even had a motion to suppress been granted, petitioner cannot show a reasonable probability that the result of the trial would have been different. The bulk of the evidence against petitioner came from Cottleon's testimony, and the evidence of the cocaine conspiracy in general came from the cocaine found in the other vehicle in Michigan, a seizure which petitioner does not contend he had any basis to challenge. The only evidence from the Missouri search of the Durango that was admitted at petitioner's trial were two documents which connected

both petitioner and Cottleon to the vehicle, thus showing a connection between petitioner and Cottleon. However, other evidence established a connection between the two. When petitioner was pulled over in Missouri the first time, on the way from Arizona to Michigan, Cottleon was in the car with him. And indeed counsel indicated during opening statement that petitioner was not disputing that he knew Cottleon or that he drove from Arizona to Michigan with Cottleon. *See* Trial Tr., dated 11/29/06, at 66. Thus, the only evidence from the search admitted at trial did nothing more than confirm what other evidence showed and what petitioner willingly conceded, namely, that he knew Cottleon. In these circumstances, petitioner cannot show a reasonably probability that the result of the proceeding would have been different had a motion to suppress been granted. Accordingly, petitioner is not entitled to habeas relief on this claim.

### b. Ineffective Assistance at Sentencing (Claim VII)

Petitioner next contends that counsel was ineffective at sentencing by acquiescing in the prosecutor's argument that petitioner was a ringleader for purposes of scoring the sentencing guidelines. The Michigan Court of Appeals rejected this claim, reasoning both that counsel did "challenge[] the evidence against defendant and argue[] that defendant was only a 'minor player' in this drug trafficking case," and that petitioner could not show prejudice because Offense Variable 14 was properly scored by the trial court, and thus any objection would have been futile. *Cardenas-Borbon*, 2008 WL 5003030, at *5. This determination was reasonable.

First, petitioner cannot show that counsel's performance was deficient because counsel, in fact, challenged the scoring of Offense Variable 14. At sentencing, counsel spoke extensively about the various participants' roles in the offense, and argued that Cottleon's testimony as to petitioner's role was not credible and need not be accepted by the court notwithstanding the jury's verdict, and

55

that the prosecution could not show that petitioner was anything more than a minor participant in the crime. *See* Sentence Tr., at 5-12. Indeed, counsel's entire argument at sentencing was related to this issue. Second, petitioner cannot show that he was prejudiced by any inadequacies in counsel's arguments at sentencing. The Michigan Court of Appeals determined, as a matter of state law, that the trial court properly scored Offense Variable 14. In analyzing petitioner's ineffective assistance of counsel claim, this expression of state law is binding on this Court. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action."). Thus, any further objection to the scoring of Offense Variable 14 would have been meritless. Because it is well established that counsel cannot be deemed ineffective for failing to raise a meritless objection, *see Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993), petitioner is not entitled to habeas relief on this claim.

### c. Failure to Challenge Loss of Documents (Claim IX)

Petitioner next contends that counsel was ineffective for failing to challenge the loss of his passport and visa, arguing that the prosecution violated the *Brady* rule by suppressing this evidence. The Michigan Court of Appeals rejected this claim, reasoning that "[t]here is no indication that the prosecutor either possessed or suppressed defendant's travel documents," and that petitioner failed to "explain how this evidence was favorable to his defense." *Cardenas-Borbon*, 2008 WL 5003030, at *7. "Because there is no basis for finding a *Brady* violation," the court concluded, petitioner "cannot establish a claim of ineffective assistance of counsel in this regard." *Id*. This determination was reasonable.

56

As the court of appeals explained, there is absolutely no evidence in the record to suggest that the prosecution ever had in its possession petitioner's travel documents. In the absence of any evidence that the prosecution suppressed evidence that it was in its possession, there was no *Brady* claim to be raised by counsel. *See United States v. Jones*, 34 F.3d 596, 599 (8th Cir. 1994) (" Brady requires the prosecution to disclose to the defendant only evidence in the prosecution's possession."); *United States v. Chen*, 754 F.2d 817, 824 (9th Cir. 1985) (*Brady* does not required government to produce "information that it does not possess or of which it is unaware."). Further, petitioner has failed to explain how his travel documents were material for purposes of *Brady*, or how the presentation of these documents would have created a reasonably probability of a different result. Whether petitioner was traveling in the United States on a proper visa was wholly irrelevant to the charges against him. Such information would have had no bearing on whether petitioner was part of the drug trafficking conspiracy in which he was implicated by Cottleon's testimony. Thus, petitioner cannot show that counsel's performance was deficient, or that he was prejudiced thereby. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d.  Failure to Challenge Denial of Vienna Convention Rights (Claim X)

Petitioner next argues that counsel was ineffective for failing to challenge the alleged denial of his right under Article 36 of the Vienna Convention on Consular Relations to contact the Mexican consulate. The Michigan Court of Appeals rejected this claim, reasoning that petitioner had failed to show how counsel's failure prejudiced him. *See Cardenas-Borbon*, 2008 WL 5003030, at *7. This determination was reasonable. Although the Supreme Court has declined to rule on whether the Vienna Convention creates individually enforceable rights, *see Medellin v. Texas*, 552 U.S. 491, 506 n.4 (2008), the Sixth Circuit has held that the Convention does not create individually enforceable

rights.  *See United States v. Emuegbunam*, 268 F.3d 377, 389 (6th Cir. 2001).  Thus, dismissal of criminal charges is not an appropriate remedy for a Vienna Convention violation.  *See id.* at 390. Further, the Supreme Court has held that any suppression of evidence is not an appropriate remedy for a violation of the Convention.  *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345-50 (2006). Because counsel's raising of the issue would have resulted in neither dismissal of the charges nor suppression of the evidence, petitioner cannot establish that he was prejudiced by counsel's failure to challenge the denial of his Vienna Convention rights.  *See Carty v. Quarterman*, 345 Fed. Appx. 897, 905-06 (5th Cir. 2009); *United States v. Valdez*, 104 Fed. Appx. 624, 626-27 (9th Cir. 2004); *United States v. De La Pava*, 268 F.3d 157, 163 (2d Cir. 2001).

Nor can petitioner establish that there is a reasonable probability that the outcome of his trial would have been different had the Mexican consulate been contacted.  To establish this type of prejudice, petitioner must demonstrate "a realistic prospect of consular assistance" and "explain the nature of the assistance he might have received had he been alerted to his Article 36 rights." *Osagiede v. United States*, 543 F.3d 399, 413 (7th Cir. 2008).  In other words, petitioner must demonstrate that the Mexican consulate both "*could* have" and "*would* have assisted him."  *Id.* (emphasis in original).  Here, petitioner has offered nothing to show that the Mexican consulate would have and could have assisted him.  He does not argue that any evidence exists that the Mexican consulate could have helped him secure, nor does he suggest any way in which the Mexican consulate could have offered assistance that would have created a reasonable probability of a different result at trial.  Thus, petitioner cannot establish that he was prejudiced by counsel's failure to challenge the alleged denial of his Article 36 rights, and he is therefore not entitled to habeas relief on this claim.

*e. Failure to Raise Actual Innocence (Claim XIX)*

Petitioner next asserts that counsel was ineffective for failing to raise his actual innocence. The Court should conclude that petitioner is not entitled to habeas relief on this claim. Counsel's defense at trial was premised on actual innocence. He cross-examined Cottleon extensively, and argued that petitioner was not involved in the drug conspiracy. The basis of counsel's entire defense was that the prosecution presented no evidence of petitioner's involvement beyond Cottleon's testimony, and that Cottleon's testimony was not believable and, even if believable, was insufficient to demonstrate that petitioner was part of the conspiracy. Thus, trial counsel raised throughout the trial that petitioner was actually innocent. Apart from challenging the evidence at trial, petitioner does not suggest what else trial counsel could have done to assert his actual innocence. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.    *Appellate Counsel (Claims XIX & XXIV)*

Petitioner also contends that appellate counsel was ineffective for failing to raise his actual innocence and for failing to assert his postconviction relief claims on direct review. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

With respect to appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id.* As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id.* (quoting

*Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).   Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal.   *See id.* at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).   Here, petitioner cannot show that counsel was ineffective.   Counsel raised numerous, significant claims on direct appeal, including claims that: the evidence was insufficient; petitioner was denied a fair trial by the denial of his motion to sever; the prosecutor committed prejudicial misconduct; and trial counsel was ineffective in various respects.   Counsel also assisted petitioner in filing a *pro se* supplemental brief raising several additional claims that were adjudicated on the merits by the Michigan Court of Appeals.   Petitioner cannot show that any of the omitted claims were clearly stronger than the claims counsel chose to pursue.

Nor can petitioner establish prejudice by showing a reasonable probability that the omitted claims would have succeeded on appeal.   As explained above, each of petitioner's postconviction relief claims is without merit, and thus there is not a reasonably probability that they would have succeeded on appeal.   Nor would a claim based on actual innocence have succeeded on appeal.   First, petitioner has not cited, and I have not found, any Michigan case suggesting that actual innocence provides an independent basis for relief on direct review of a criminal conviction.   Second, even if such a claim were cognizable, petitioner has not shown that he is actually innocent.   Petitioner's innocence argument is not based on any new evidence, but rather on his assertion that Cottleon was not credible.   The Michigan Court of Appeals dealt with this argument in rejecting petitioner's claims challenging the weight and sufficiency of the evidence, and there is no reason to believe that the Michigan Court of Appeals would have resolved the matter differently had counsel raised a

freestanding innocence claim that has yet to be recognized by the Michigan courts. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

N.     *Cumulative Error (Claim VIII)*

Finally, petitioner contends that he was denied a fair trial by the cumulative effect of the errors at trial. The Michigan Court of Appeals rejected this claim, explaining that "[b]ecause no cognizable errors warranting relief have been identified, reversal under a cumulative error theory is unwarranted." *Cardenas-Borbon*, 2008 WL 5003030, at *8. This determination was reasonable. It is true that "[e]rrors which standing alone may be deemed harmless or insufficiently prejudicial to amount to a denial of due process may cumulatively produce a trial setting which is fundamentally unfair." *Payne v. Janasz*, 711 F.2d 1305, 1316 (6th Cir. 1983) (Jones, J., dissenting); *accord Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983). This rule, however, applies only to constitutional errors; the accumulation of non-errors cannot collectively amount to a violation of due process. *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999); *McKinnon v. Ohio*, No. 94-4256, 1995 WL 570918, at *12 (6th Cir. Sept. 27, 1995); *Fero v. Kerby*, 39 F.3d 1462, 1475 (10th Cir. 1994). As noted and discussed in this Report, none of petitioner's claims establish constitutional error, and thus his cumulative error claim fails. Further, because the Supreme Court has never held that non-prejudicial errors may be cumulated to grant habeas relief, *see Lorraine*, 291 F.3d at 447, "post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

O.     *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.   *See* 28 U.S.C. § 2253(c)(1).   The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).   Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.   Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."   *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254

Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

      2.    *Analysis*

      If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  Because petitioner's weight of the evidence claim is not cognizable on habeas review, and because his sufficiency of the evidence claim is limited to an attack on the credibility of Cottleon, the resolution of these claims is not reasonably debatable.  As explained above, petitioner has failed to show that he was prejudiced by having a joint trial with his codefendants, which is the normal course in drug conspiracy cases.  Thus, the resolution of this claim is not reasonably debatable.  With respect to petitioner's prosecutorial misconduct claims, the record fails to show that the prosecutor commented on petitioner's immigration status, suppressed the deal given to Cottleon for his testimony, or knowingly allowed Cottleon to commit perjury.  Thus, the resolution of petitioner's prosecutorial misconduct claims is not reasonably debatable.  Because petitioner was not prejudiced by the trial

court's correct instruction regarding evidence and the presumption of innocence, nor by the trial court's failure to give a curative instruction regarding threats made to Cottleon, the resolution of petitioner's instructional error claims is not reasonably debatable. Petitioner has failed to provide any support for his claim that he was denied a jury drawn from a fair cross-section of the community, and thus the resolution of this claim is not reasonably debatable. For the reasons explained above it is clear that the *Barker* factors do not support a finding that petitioner was denied his right to a speedy trial, and thus the resolution of this claim is not reasonably debatable. Likewise, for the reasons explained above, the resolution of petitioner's ineffective assistance of counsel claims is not reasonably debatable. Finally, because it is clear that they present grounds for relief that are not cognizable on habeas review, the resolution of petitioner's bindover, jurisdiction, expert witness, Michigan speedy trial act, and cumulative error claims is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

P.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. With respect to petitioner's claims that were not adjudicated on the merits in the state courts, the Court should conclude that petitioner has failed to establish a constitutional violation. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Date: December 23, 2013                         s/Paul J. Komives_____
                                                PAUL J. KOMIVES
                                                UNITED STATES MAGISTRATE JUDGE



<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on December 23, 2013.


                                                s/ Kay Doaks_____
                                                Case Manager